FILED

2023 Mar-27  PM 04:10
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER JAMES WILLIAMS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | 2:20-cv-08009-LSC |
| | ) | (2:17-cr-00315-LSC-JEO-1) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OF OPINION**

## I.    Introduction

Petitioner Christopher James Williams ("Williams") filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. 1.) Williams sought relief from his 60-month sentence of imprisonment following the revocation of a term of supervised release. Williams raised two ineffective assistance of counsel claims: (1) his attorney failed to secure a lesser sentence; and (2) his attorney failed to file a notice of appeal. Although Williams was imprisoned when he filed his § 2255 motion, according to the Bureau of Prisons' Inmate Locator online database, Williams was released on December 23, 2022, with no term of supervised release to

follow. As is explained further herein, the petition is due to be dismissed for lack of jurisdiction.

## II.    Background

In 2005, Williams pled guilty to conspiracy to possess with intent to distribute crack cocaine, in violation of 21 U.S.C. § 846, and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), in the United States District Court for the Southern District of Alabama. (Doc. 27 in *United States v. Williams*, 2:05-cr-00087-WS-B (S.D. Ala.).) Williams was sentenced to a term of imprisonment of 210 months followed by a period of supervised release of five years. (Doc. 35 in 2:05-cr-00087-WS-B.) In 2009, his sentence was reduced to 168 months' imprisonment, and in 2015, it was reduced to 135 months' imprisonment. Williams was released from prison, and his term of supervised release commenced, in 2015.

On or about July 5, 2017, Williams was arrested in Tuscaloosa County, Alabama, and charged with illegally trafficking cocaine and marijuana in violation of Ala. Code § 13A-12-231 (2018). At the time of his arrest, Williams was on supervised release stemming from his 2005 convictions. Williams was released on bond.

On July 14, 2017, Williams requested transfer of jurisdiction to the United States District Court for the Northern District of Alabama, and jurisdiction was accepted by the Northern District of Alabama. (Doc. 1 in *Unites States v. Williams*,

2:17-cr-00315-LSC-JEO-1.) On July 19, 2017, after learning of Williams' recent arrest and subsequent release on bond, the Federal Probation Office filed a petition to revoke Williams' supervised release. The next day, this Court issued a warrant for Williams for violating his supervised release terms. (Doc. 2 in 2:17-cr-00315-LSC-JEO-1.) However, over the next year, Williams never reported to the Federal Probation Office, nor was that office able to locate him.

On July 22, 2018, Williams was arrested by an officer of the Pelham Police Department on charges of Obstruction of Justice – False Identification, in violation of Ala. Code § 13A-8-194, and placed in custody in Shelby County, Alabama. (Doc. 5 in 2:17-cr-00315-LSC-JEO-1.) The Federal Probation Office was notified, and an Addendum to the request for the warrant for Williams' arrest was issued.

On August 17, 2018, Raymond L. Johnson Jr. ("Mr. Johnson") entered a notice of attorney appearance before this Court representing Williams in his supervised release revocation proceedings. (Doc. 4 in 2:17-cr-00315-LSC-JEO-1.) On September 6, 2018, Williams was present for an initial appearance on a petition to revoke his supervised release.

Williams' revocation hearing before this Court began on January 31, 2019. A federal probation officer and an investigator with the Tuscaloosa County Sheriff's Office testified. Testimony was presented that Williams was found with 1.2

kilograms of cocaine, 3.1 kilograms of marijuana, $18,173 worth of currency, and a 9mm semi-automatic pistol while on supervised release. Williams then testified, during which time he stated that he desired to work with law enforcement and the Government to provide information on a capital murder investigation in hopes of receiving a recommendation of a lesser sentence. This Court found that Williams had violated the terms of his supervised release and that a 60-month sentence was warranted, but the Court continued the hearing to allow the U.S. Attorney and the District Attorney for Tuscaloosa County to discuss whether to allow Williams to cooperate with the Tuscaloosa District Attorney's Office and the U.S. Attorney.

Williams' revocation hearing before this Court continued on February 28, 2019. Mr. Johnson stated that he had communicated with the Tuscaloosa County District Attorney's office and that they were not inclined to work with Williams but that if given a continuance Williams could provide them more information on the homicide that they were investigating. The Government stated that they were opposed to any continuance of the sentencing. Williams stipulated to the violations, and this Court found that Williams violated the terms and conditions of his supervised release. This Court sentenced Williams to a term of 60 months' imprisonment with no supervised release to follow. This Court informed Williams and the Government that if the Tuscaloosa County District Attorney and the U.S.

Attorney's Office jointly petitioned the Court to set aside Williams' 60-month sentence within 14 days, the Court would allow Williams to provide substantial assistance and cooperate with the Government. No such request was ever filed.

Williams did not appeal. He filed, *pro se*, the instant § 2255 motion on March 2, 2020. The Government filed, under seal, a response to Williams' motion that recommended that an evidentiary hearing be held on the failure-to-file-an-appeal ineffective assistance of counsel claim. (Doc. 7.) The Government's response included a transcript of Williams' supervised release revocation hearing as well as an affidavit by Williams' former defense counsel, Mr. Johnson. (Doc. 7-1, 7-2, 7-3.) Williams then replied in support of his motion. (Doc. 8). Attorney Joel Sogol subsequently entered a notice of appearance on behalf of Williams. (Doc. 9.) This Court held an evidentiary hearing on Williams's motion on October 21, 2021.

## III.    Timeliness and Non-Successiveness of the § 2255 Motion

Judgment was entered by this Court on March 1, 2019, against Williams for violating the terms of his supervised release. (Doc. 10 in 2:17-cr-00315-LSC-JEO-1.) From that point, Williams had 14 days, or until March 15, 2019, to appeal his sentence. *See* Fed. R. App. P. 4(b)(1)(A). When that date passed without a notice of appeal, his conviction became final. Williams then placed in the prison mail system his instant § 2255 motion on February 25, 2020. (Doc. 1.) Because Williams filed the

instant § 2255 motion within one year of the date upon which his conviction became final, the motion was timely. *See* 28 U.S.C. § 2255(f)(1). This is also Williams' first § 2255 motion with regard to the revocation of his supervised release, so it is not "second or successive" within the meaning of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See id.* at §§ 2255(h), 2244(b)(3)(A).

## IV. Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to 28 U.S.C. § 2255 are extremely limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

In litigation stemming from a § 2255 motion, "'[a] hearing is not required on patently frivolous claims or those which are based upon unsupported

generalizations. Nor is a hearing required where the . . . [movant's] allegations are affirmatively contradicted by the record.'" *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (quoting *Guerra v. United States*, 588 F.2d 519, 520-21 (5th Cir. 1979)). However, it is appropriate for the Court to conduct an evidentiary hearing if, "'accept[ing] all of the . . . [movant's] alleged facts as true,'" the movant has "'allege[d] facts which, if proven, would entitle him to relief.'" *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991) (internal citations omitted).

## V.    Discussion

Williams raises two ineffective assistance of counsel claims: (1) his defense counsel failed to secure a lower sentence; and (2) his defense counsel failed to pursue a direct appeal despite Williams asking him to. Each claim is addressed in turn.

### A.    Williams' release from prison means that this Court lacks jurisdiction to consider the challenge to his sentence[1]

Under § 2255, a criminal defendant must be "in [federal] custody" to file a habeas petition. 28 U.S.C. § 2255(a). Because Williams was in custody at the time that he filed his § 2255 petition, he satisfied the requirements of § 2255(a). However, a claim becomes moot when a prisoner receives relief before a court resolves his

---

[1]    Although the parties have not addressed mootness, neither having made any filings subsequent to Williams' release, the Court considers it *sua sponte* because it is a jurisdictional issue. *National Advert. Co. v. City of Miami*, 402 F.3d 1329, 1331–32 (11th Cir. 2005) (noting that mootness "may be raised by the court *sua sponte*, regardless of whether the district court considered it or if the parties briefed the issue").

motion. When that happens, the controversy between the parties disappears, and there is no issue for the court to resolve. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them . . . our impotence 'to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy'") (citations omitted). Williams has effectively received the relief that he requested in claim 1 of his § 2255 motion – a lesser sentence – because, according to the records of the Federal Bureau of Prisons, Williams was released from custody on December 23, 2022. *See United States v. Farmer*, 923 F.2d 1557, 1568 (11th Cir. 1991) (completion of a prison term ordinarily moots a challenge to the term of confinement).

However, a § 2255 motion does not *automatically* become moot when a prisoner is released from custody. "A habeas petitioner who has been released from imprisonment subsequent to his filing a [§ 2255 motion] must establish that his petition still presents a case or controversy under Article III, § 2, of the United States Constitution, and therefore is not moot." *Mattern v. Sec'y for Dep't of Corr.*, 494 F.3d 1282, 1285 (11th Cir. 2007); *see also Spencer v. Kemna*, 523 U.S. 1, 7 (1998). After a prisoner is released, "some concrete and continuing injury other than the now-ended

incarceration or parole—some collateral consequence of the conviction—must exist if the suit is to be maintained." *Spencer*, 523 U.S. at 7. "When a habeas petitioner challenges his underlying conviction, and he is released during the pendency of his habeas petition, federal courts presume that 'a wrongful criminal conviction has continuing collateral consequences' sufficient to satisfy the injury requirement" and constitute a viable case or controversy. *United States v. Wilson*, 525 F. Supp. 2d 691, 694 (D. Del. 2007) (citing *Spencer*, 523 U.S. at 7); *see also Spencer*, 523 U.S. at 11-13 (collateral legal consequences of a conviction include the taking away of certain civil rights like the ability to serve on a jury, vote, and hold public office, or the possibility that a future sentence may be increased under recidivist laws); *see also Sibron v. New York*, 392 U.S. 40, 55 (1968) ("The Court has thus acknowledged the obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences.").

On the other hand, this presumption of collateral consequences "*does not apply* when a prisoner challenges only the length of his sentence, not some aspect of the conviction itself." *Bailey v. United States*, 2013 WL 4851679 at *5 (N.D. Ala. Sept. 10, 2013) ("Mr. Bailey does not attack the validity of his guilty plea; he challenges only the length of his sentence [through an allegation that his attorney was ineffective at sentencing]. Consequently, because [he] has been released from prison, the Court

can 'no longer provide him the primary relief sought in his habeas petition.' Accordingly, Mr. Bailey's challenge to his sentence is moot.") (citations omitted); *Guzman v. United States*, 2007 WL 1821698 *1 (S.D.N.Y. June 26, 2007) ("Since the petition is directed at his sentence, not his conviction, and thus there is no 'collateral consequence' . . . the petition should be dismissed as moot."); *Davis v. United States*, 2004 WL 1488371 *4 (S.D.N.Y. July 1, 2004) ("Because Davis has been released from prison and subsequently deported, the Court can no longer provide him the primary relief sought in his habeas corpus petition. His challenges to his sentence are therefore moot and must be dismissed.").

Here, Williams does not attack the court's finding that he violated the terms of his supervised release (he stipulated to that finding at his revocation hearing); he challenges only the length of his sentence. Consequently, because Williams has been released from prison, the Court can no longer provide him the relief that he seeks in claim 1, and Williams' challenge to his sentence is moot. When the issue that a prisoner presents in a § 2255 motion becomes moot, the Court loses jurisdiction over the proceeding. And when the Court lacks jurisdiction, it must dismiss the action pending before it. *Rice*, 404 U.S. at 246 ("Moot questions require no answer. Mootness is a jurisdictional question because the Court is not empowered to decide

moot questions or abstract propositions.") (citations and quotation marks omitted).[2]
Accordingly, this Court lacks jurisdiction over this claim and it is due to be dismissed.

**B.    Williams' release from prison also means that this Court lacks jurisdiction to consider his claim that his counsel failed to file a notice of appeal**

Williams' second claim is that his attorney failed to file a notice of appeal from the revocation of his supervised release. The remedy available to a § 2255 petitioner who successfully persuades a court that his lawyer performed deficiently by failing to file a notice of appeal is the ability to file a delayed direct appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000) ("when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant [is] entitl[ed] . . . to an appeal"). Here, however, Williams indicates that the target of his appeal would have been the length of his sentence – that it

---

[2]       Were the Court to reach the merits of Williams' ineffective assistance of counsel argument, it would deny the claim. To prevail on a claim of ineffective assistance of counsel, the movant must establish deficient performance, *i.e.,* performance by counsel that fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). The movant also must demonstrate that he was prejudiced by the purported deficient performance. *Id*. The record, established by the testimony at the evidentiary hearing, contradicts Williams' argument that, had Mr. Johnson successfully facilitated his cooperation with the Tuscaloosa County District Attorney's Office in an ongoing homicide investigation, this Court would have sentenced him to a lesser sentence to allow him time to cooperate with that agency. The Tuscaloosa County District Attorney's Office repeatedly told this Court that Williams did not have information pertaining to that investigation that would have been of any use to them. Accordingly, this Court would not have sentenced Williams differently, and his ineffective assistance of counsel claim lacks merit.

exceeded the recommended Guidelines sentence. Thus, for the same reasons as above, Williams' release from prison has mooted this issue because it no longer presents a case or controversy under Article III, § 2, of the Constitution. Indeed, if this Court were to grant Williams' § 2255 petition on this issue and grant Williams a delayed appeal, the Eleventh Circuit on any resulting direct appeal would be precluded from ruling on the merits because Williams has already served the challenged sentence. *See United States v. Sewell*, 712 F. App'x 917, 919 (11th Cir. 2017) ("A sentencing appeal is generally moot when the sentence has already been served."). And since Williams would be challenging the sentence, not some underlying aspect of the revocation itself, he could not demonstrate collateral consequences.

In any event, in *Spencer*, the Supreme Court held that, unlike with criminal convictions, there is no presumption that collateral consequences flow from mere revocations of parole. *See* 523 U.S. at 12-14 ("While it is an 'obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences,' [t]he same cannot be said of parole revocation.") (quoting *Sibron*, 392 U.S. at 55). Additionally, although *Spencer* addressed collateral consequence in the realm of parole revocations, courts of appeal have held that the same rule applies to the revocation of supervised release in federal courts. *See e.g., United States v. Meyers*,

200 F.3d 715, 721 n.2 (10th Cir. 2000) ("This court can discern no relevant differences between parole and supervised release which would militate against the applicability of *Spencer.*"); *United States v. Clark*, 193 F.3d 845, 847–48 (5th Cir. 1999) (applying *Spencer* and dismissing as moot a challenge to the district court's extension of supervised release); *United States v. Probber*, 170 F.3d 345, 348–49 (2d Cir. 1999) (applying *Spencer* and dismissing as moot a challenge to the revocation of supervised release); *United States v. Kissinger*, 309 F.3d 179, 181–82 (3d Cir. 2002) (holding *Spencer* applies to parole revocations). Thus, unlike underlying criminal convictions, there is no presumption that collateral consequences similarly flow from the revocation of terms of supervised release.

Accordingly, because the Court cannot provide Williams with relief on this claim, it is also due to be dismissed for lack of jurisdiction.[3]

---

[3]    Were the Court to reach the merits of the ineffective assistance of counsel claim, it would deny the claim. The Eleventh Circuit has held "that a lawyer who disregards instructions from his client to appeal has acted 'in a manner that is professionally unreasonable.'" *Gomez-Diaz v. United States*, 433 F.3d 788, 789 (11th Cir. 2005) (quoting *Flores-Ortega*, 528 U.S. at 477). In that situation, the habeas petitioner does not have to establish prejudice beyond showing that, but for counsel's deficient conduct, he would have appealed, even if the appeal would have lacked merit. *Id.* at 792-93. The Government provided Mr. Johnson's affidavit in which he disputed Williams' allegation that he asked him to file an appeal. As such, this Court held an evidentiary hearing because the conflict could not be resolved by weighing Williams' petition against Mr. Johnson's affidavit. *See, e.g., Rosero v. United States*, 195 F. App'x 894, 898 (11th Cir. 2006) (remanding § 2255 action for district court to conduct evidentiary hearing into whether petitioner in fact requested counsel to file direct appeal).

At the evidentiary hearing, this Court heard from Williams and Mr. Johnson. Williams testified that he, and later his brother, asked Mr. Johnson to file an appeal, but he refused, claiming

that it would not make sense to appeal. (Transcript at 15-16.) Mr. Johnson testified that he has no recollection of Williams ever asking him to file a notice of appeal, that in his 40 years of representing criminal defendants, there had never been a time where a criminal defendant had asked him to file an appeal that he had refused to do so; and that he did not ignore Williams' instruction to appeal. (*Id.* at 31-32.)

If this Court were to consider this claim on the merits, it would credit Mr. Johnson's testimony that Williams did not ask him to file an appeal over Williams' testimony to the contrary. It is clear to this Court that Williams filed this habeas petition because this Court refused his request to have his state court bond reinstated so that he could cooperate with the Government on the homicide investigation rather than having to be sent back to prison on the revocation of his supervised release. Williams' focus and emphasis in this proceeding was never on his failure-to-appeal claim. Indeed, although his habeas petition contained one sentence alleging that he requested Mr. Johnson to appeal his 60-month sentence because it exceeded the Guidelines-recommended sentence of 26 to 33 months, he provided no details about how or when he asked Mr. Johnson to file the appeal and provided no supporting documentation of that request. Additionally, his brief in support, while containing pages of details about his desire to cooperate with the Government, makes no mention of the failure-to-appeal claim. Then, at the evidentiary hearing, after Williams had testified at length about his claim that he should have been let out on bond, the Court had to prompt Williams' counsel to address the failure-to-appeal issue with Williams, as follows:

|  |  |
|---|---|
| Mr. Sogol: | I have no other questions Judge. |
| The Court: | What about his appeal? |
| Mr. Sogol: | I'm sorry? |
| The Court: | Appeal. |
| Mr. Sogol: | Go ahead. |
| Williams: | With the appeal -- |
| The Court: | Wait for you lawyer asks a question: |
| Mr. Sogol: | When your release was revoked, did he talk[] to Raymond about appealing that . . . |

(Transcript at 14.) Presumably Williams would not have addressed the failure-to-appeal issue had the Court not intervened. Further, Williams stipulated to the finding that he violated the conditions of his supervised release. Guilty pleas tend to indicate that the defendant is "interested in seek[ing] an end to the judicial proceedings." *See Otero v. United States*, 499 F.3d 1267, 1270

## VI.  Conclusion

For the aforementioned reasons, Williams's § 2255 motion is due to be dismissed for lack of jurisdiction.

Rule 11 of the Rules Governing § 2255 Proceedings requires the Court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  *See* Rule 11, Rules Governing § 2255 Proceedings.  This Court may issue a certificate of appealability "only if the applicant has a made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, a "petitioner must demonstrate that a reasonable jurist would find the district court's assessment of the constitutional claims debatable and wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations omitted). This Court finds that Williams' claims do not satisfy either standard.

A separate order consistent with this opinion will be entered.

---

(11th Cir. 2007). For all of the above-mentioned reasons, if the Court were to consider the merits of this claim, it would find that Williams is not entitled to an out-of-time appeal.

**DONE** and **ORDERED** on March 27, 2023.

L. Scott Coogler
United States District Judge

160704